## UNITED STATES EX REL. JOHNSON *v.* LANE.

---

INDIAN TRIBES; ENROLMENT.

1. The Secretary of the Interior cannot be compelled by mandamus to place upon the rolls of the Creek tribe and approve the enrolment of the names of Indians entitled to enrolment in such tribe under the Act of Congress of March 1, 1901 (31 Stat. at L. 861, 870, chap. 676), after the 4th of March, 1907, after which date it is provided by the Act of Congress of April 26, 1906 (34 Stat. at L. 137, chap. 1876), that the Secretary shall have no jurisdiction to approve enrolment of any person.

2. The decision of a commissioner, deriving his authority solely from his appointment by the Secretary of the Interior, that certain Indians are entitled under the Act of Congress of March 1, 1901

(31 Stat. at L. 861, 870, chap. 676), to enrolment as citizens of the Creek tribe, even when approved by the Secretary, being nothing more than a declaration that such Indians are entitled to be so enrolled, and as such act attaches no legal significance to such a declaration, but rights arise under it only from the fact of enrolment coupled with the Secretary's approval thereof, the Secretary's revocation of his approval of such commissioner's decision without notice to such Indians, in the exercise of the discretion vested in him by Congress, before the placing of their names upon the rolls,— is not subject to the control of the courts. (Citing *United States ex rel. Ashley* v. *Roper, ante,* 69.)

No. 3157. Submitted October 8, 1918. Decided November 4, 1918.

HEARING on an appeal from a judgment of the Supreme Court of the District of Columbia, denying a petition for mandamus to the Secretary of the Interior.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

The appellants, Jennie Johnson, Mary F. Street, formerly Mary Fanny Johnson, Jennie B. Wallace, formerly Jennie Belle Johnson, et al., claiming to be blood Indian members of the Creek tribe or nation of Indians in the State of Oklahoma, applied to the court below for a writ of mandamus directed to the Secretary of the Interior, and commanding him to place their names upon the approved rolls of the members of that nation, and to accord to them the status and rights belonging to such members. The application was denied, and they appeal.

*Mr. Chas. H. Merillat* and *Mr. W. C. Franklin,* for appellants, in their brief cited:

*Cornelius* v. *Kessel,* 128 U. S. 456; *Davidson* v. *New Orleans,* 96 U. S. 397; *Davis* v. *Florida Power Co.* 64 Fla. 247; *Delles* v. *Second Nat. Bank,* 75 Am. St. Rep. 875; *Dreyfus* v. *Montgomery,* 58 So. 731; *Dental Examiners* v. *People,* 123 Ill. 241; *Fayerweather* v. *Ritch,* 88 Fed. 713; *Hitchcock* v. *Smith,* 34 App. D. C. 52; *Re Hatch,* 2 Jones & S. 89; *Inter-*

*state Commerce Commission* v. *L. & N. R. Co.* 227 U. S. 88;
*Iowa C. R. Co.* v. *Iowa,* 160 U. S. 389; *James* v. *Germania
Iron Co.* 107 Fed. 597; *Knapp* v. *Alexander,* 237 U. S. 162;
*Londoner* v. *Denver,* 210 U. S. 373; *Lewis* v. *Shaw,* 57 Fed.
516; *New York Indians,* 174 U. S. 1; *Opinions Attorney General* (24–127); *Orchard* v. *Alexander,* 157 U. S. 381; *Risdon*
v. *Davenport,* 57 N. W. 432; *Sheldon* v. *Hayne,* 261 Ill. 225;
*Simon* v. *Craft,* 182 U. S. 427; *Stark* v. *Starr,* 6 Wall. 402;
*Stephens* v. *Cherokee Nation,* 174 U. S. 446; *Twining* v. *New
Jersey,* 211 U. S. 78; *United States* v. *Billings,* 190 Fed. 363;
*United States* v. *Detroit Lumber Co.* 200 U. S. 321; *United
States ex rel. Garfield* v. *Goldsby,* 211 U. S. 168; *United
States ex rel. Lowe* v. *Fisher,* 223 U. S. 95; *United States* v.
*Wildcat* (recently decided); *Wallowa Nat. Bank* v. *Riley,* 54
Am. St. 795; *Wright* v. *Cradlebaugh,* 3 Nev. 310; *Wynehamer*
v. *People,* 2 Park. Crim. Rep. 421; *Wulzen* v. *Board of Supervisors,* 101 Cal. 15; *Zeigler* v. *South & North Ala. R. Co.* 58
Ala. 594.

*Mr. C. Edward Wright* and *Mr. C. D. Mahaffie* for the appellee.

*Mr. Chief Justice* SMYTH delivered the opinion of the Court:

The Act of Congress, June 28, 1898 (30 Stat. at L. 495,
chap. 517), authorized and directed the Dawes Commission "to
make correct rolls of the citizens by blood" of the five tribes of
Indians of which the Creek nation was one. Under the Act
of March 1, 1901 (31 Stat. at L. 861, 870, chap. 676), ratified
by the Creek nation, it was provided that "all citizens who were
living on the 1st day of April, 1899, entitled to be enrolled
under  *  *  *  the Act of Congress approved June 28th,
1898,  *  *  *  shall be placed upon the rolls to be made by
said Commission," and that the rolls thus made, "when approved by the Secretary of the Interior, shall be the final rolls
of citizenship of said tribe, upon which the allotment of all
lands and the distribution of all moneys and other property

of the tribe shall be made, and to no other persons." The Dawes Commission was abolished in 1904 (33 Stat. at L. 189, chap. 1402), and all its powers were vested in the Secretary of the Interior after July 1, 1905, by the Act of March 3, 1905 (33 Stat. at L. 1048, 1059, chap. 1479). This latter act provided that the "work of completing the unfinished business, if any, of the Commission to the five civilized tribes, shall devolve upon the Secretary of the Interior." To aid him in the performance of this work the Secretary, on June 26, 1905, selected Tam Bixby, whom he designated as a "commissioner." This commissioner had no statutory or other authority except that derived from the Secretary by virtue of his appointment.

The appellants, Jennie Johnson and her children, applied to Bixby to have their names placed upon the roll of the Creek nation. Bixby examined their claims, found that they were entitled to be enrolled, and granted their application, September 26, 1906. He was then in Muskogee, Indian Territory, from which place he forwarded his decision to the Commissioner of Indian Affairs for his consideration. On February 15, 1907, the Acting Commissioner of Indian Affairs recommended to the Secretary of the Interior that the decision be approved. A few days thereafter the Acting Secretary wrote to Mr. Bixby at Muskogee that his decision had been affirmed. On the same day on which he received this letter he also received a telegram from the Secretary to the effect that the Attorney General had rendered an opinion which was inconsistent with the decision which had been reached by the Department of the Interior in certain cases affecting the rights of the Indian tribes. Upon an examination of this opinion the commissioner reached the conclusion that it was not in harmony with his decision in the Johnson case, and he, on February 27th, wrote to the Secretary asking that his decision in that case be not concurred in. This letter, it appears, was sent before he had received the acting Secretary's letter affirming his decision. March 1st, not having received any response to his letter of February 28th, he wired the Secretary, calling attention to the letter and his recommendation therein. The Secre-

tary, on March 4th, rescinded the action of the acting Secretary in approving the commissioner's decision, and on the same day notified Mr. Bixby.

Up to this time the names of the appellants had not been placed upon the rolls in response to the recommendation of the commissioner, nor have they ever been placed there, and of course the rolls with their names upon them were never approved by the Secretary of the Interior as required by the Act of March 1, 1901, *supra.*

The Act of April 26, 1906 (34 Stat. at L. 137, chap. 1876), provided "that the rolls of the tribes affected by this act shall be fully completed on or before the 4th day of March, 1907, and the Secretary of the Interior shall have no jurisdiction to approve the enrolment of any person after said date."

The Creek nation is one of the tribes affected.

The contention of the appellants is that the letter of the Assistant Secretary of the Interior, February 19, 1907, affirming the action of Commissioner Bixby, gave to them the right to have their names placed upon the rolls; that this right could not be taken from them without notice and an opportunity to be heard; that the action of the Secretary canceling his affirmance of the commissioner's decision is void; and hence that it is the clear duty of the present Secretary of the Interior to place their names upon the rolls.

There are two answers to this contention. In the first place, it is provided by the Act of 1906, *supra,* that after the 4th of March, 1907, "the Secretary of the Interior shall have no jurisdiction to approve the enrolment of any person." If we should now grant the application of the appellants to direct the Secretary to place their names upon the rolls and approve their enrolment, we would require him to do that which under the act of Congress he has no power to do. That we may not do this is so obvious that argument is unnecessary. Of course if, as in *Garfield* v. *United States,* 211 U. S. 249, 53 L. ed. 176, 29 Sup. Ct. Rep. 67, the Secretary, after having approved the enrolment of the appellants, had struck their names from the rolls without notice, the question would be quite different. In

such a case they would be deprived, without due process, of the right accruing to them by the enrolment.

In the second place, the appellants were given no right by the affirmance of Commissioner Bixby's decision. He did not hold an office created by statute. He had no powers but those given to him by the Secretary of the Interior. Until his action was approved by the Secretary, it had no legal effect. When approved it became the act of the Secretary. Even then it was nothing more than a declaration that the appellants were entitled to be enrolled. The statute under which appellants claim attached no legal significance to such a declaration. Their rights could come not from a communication by the Secretary to one of his subordinates, like Commissioner Bixby, that in his judgment they were entitled to enrolment, but from the fact of enrolment, coupled with the Secretary's approval thereof. This is manifest from the Act of March 1, 1901, *supra,* which says that the rolls "when approved by the Secretary of the Interior" shall be the rolls "upon which the allotment of all lands and the distribution of all moneys and other property of the tribe shall be made, and to no other persons." By revoking his action in affirming the decision of Commissioner Bixby, the Secretary, in the exercise of the discretion vested in him by Congress, decided, while he still had jurisdiction of the matter, that the appellants were not entitled to enrolment, and the discretion thus exercised is not subject to the control of the courts (*United States ex rel. Ashley* v. *Roper, ante,* 69, 75, and cases cited there).

There is no analogy between this case and public land cases in which a party makes proofs which are accepted by the local land office and pays his money for the land. In such cases the receiver's final receipt "is an acknowledgment by the government that it has received full pay for the land, and that it holds the legal title in trust for the entryman and will in due course issue to him a patent." *United States* v. *Detroit Timber & Lumber Co.* 200 U. S. 321, 337, 50 L. ed. 499, 505, 26 Sup. Ct. Rep. 282. The entryman's equity is based on what he did at the invitation of the government; but here the appellants

did nothing of that character.   In truth they are not predicating their claim upon anything done by them, but on the act of the Secretary of the Interior, which, as we have seen, gave them no right or privilege.

The judgment of the lower court is affirmed, with costs.

*Affirmed.*

A writ of error from the Supreme Court of the United States was received February 3, 1919.